Welcome to this week's Oral Arguments in the Eleventh Circuit. Just a housekeeping matter before we begin. You may be familiar with our lighting system, but in case you're not, it's like traffic lights. When the yellow light comes on, you have two minutes remaining in your allotted time, and when the light turns red, please quickly conclude your argument, and then you won't eat into your rebuttal time if you're the appellant. We have three cases on the calendar today. The first one is No. 22-11574, United States of America v. Munoz. Mr. Pace, you have reserved four minutes for rebuttal, correct? That is correct, Your Honor. Joseph Pace, on behalf of Petitioner Melchor Munoz, please record. The government is seeking to denaturalize Mr. Munoz without the benefit of a factual hearing on the sole grounds that when he pled to a multi-year drug conspiracy, he volunteered that he entered the conspiracy in 2008, just prior to his naturalization. Now, there is no disagreement here that the commencement date was immaterial to the elements of the case, and that had he said nothing about the start date or allocated to joining a conspiracy just after his naturalization, it would have had no effect whatsoever on the conviction or the guidelines range. You don't dispute that there's sufficient evidence, if there had been a hearing, for the district court to find that he lied on his application. You're just saying you can't hold it's collateral estoppel rights due to CADA, et cetera. Well, no, Your Honor. I think the question is whether or not he lied on his naturalization application, depending on whether he participated in the conspiracy prior to 2009. Absolutely, and there's sufficient evidence, including his own statements. Well, I disagree that his own statements would qualify as dispositive for estoppel purposes. I'm sorry. I said you don't dispute that there's sufficient evidence to find after a hearing, if all the evidence referred to in these papers is put in at the hearing to find that he lied in his naturalization application without benefit of collateral estoppel rights due to CADA, the government. I apologize, Your Honor. I misunderstood the question. You're just saying give us a finding one way or the other, district court. That is correct. What we are saying is that the government cannot avail itself of collateral estoppel doctrine to deny him the benefit of a factual hearing. And when the court invoked the estoppel doctrines, the court misapplied the law and abused its black letter law that collateral estoppel only applies to facts which are essential to the judgment, not merely consistent with the judgment, not considered in connection with the judgment, but facts without which the judgment could not have been rendered. And in the plea context in particular, collateral estoppel will only apply to those facts which were essential to the court's ability to accept the plea. And the start date, the commencement date of the conspiracy, is the very definition of an inessential fact. And the lower court's findings on judicial estoppel were equally flawed. To invoke judicial estoppel, there must be conclusive proof of an intent to make a mockery. With respect to collateral estoppel, how heavily are you relying on Judge Hinkle's order on the 2255 motion? Not very heavily. That's not essential to your argument? I don't think it's essential. I think that it undercuts their factual claim that Judge Hinkle relied on it in taking the plea. But for purposes of collateral estoppel, the question is whether a fact is legally essential. So it doesn't matter whether or not the court actually considered it. This is a purely legal question, which is, was the commencement date necessary to the elements of the crime? And as a matter of law, it wasn't. So we don't need what Judge Hinkle said in his 2255. We just think that it's suggestive that the government's theory of reliance is wrong as a matter of fact, in addition to being wrong as a matter of law. What if the reverse had happened? What if Judge Hinkle, in his order, had said, you know, I did rely on that. Mr. Minos testified under oath that he was involved with marijuana starting in 2008. So I don't think that would actually change the analysis. Because, again, the question whether or not the question under collateral estoppel is, as a matter of law, is the fact necessary and critical to the judgment? And there's uniform agreement that the commencement date of a conspiracy is not essential to the elements of the crime. So if he said, I relied on it for purposes of collateral estoppel, that would actually be an incorrect statement as a matter of law. But if I may return to judicial estoppel, this court. Well, what if he said, I relied on it, I was going to, I was going to give him a departure. Variance. But when I heard that, I relied on it and didn't. So that would actually figure into the judicial estoppel analysis because that would potentially give Mr. Minos an incentive to litigate. But it wouldn't actually figure out into the collateral estoppel analysis because, again, for collateral estoppel purposes, when we're looking at the necessary and critical element, it's like but for causation. Could he have reached this? Could the judge have reached the same outcome and accepted the plea regardless of any testimony about the commencement date? And I think the law is very clear that he could have. He could have made an adjustment. He could have made a departure. He could have declined to make an adjustment in departure regardless of what was said about the commencement. What do you make of the intended to make a mockery language that appears infectiously in some of our cases without reflection? So this court instructed in U.S. versus Steele that you cannot simply infer the requisite intent to make a mockery based on inconsistent statements. I'm sorry, I'm going beyond that. I know what you're talking about. But I'm going beyond that to say, what does make a mockery mean? The guy says one thing in the first proceeding because it's to his benefit. He doesn't imagine in the far flung realms of his imagination that there's going to be a second proceeding. But there is a second proceeding. The tables turn on the significance of the fact he testified to. And he gives a statement to the contrary. He doesn't give a hoot about what people think about the judiciary. He's just trying to get an individual benefit in the first one and an individual benefit in the second one. So what does make some mockery and tends to make a mockery mean? So I think under this court's analysis and under the Supreme Court's analysis in this case, there has to be an intent, a cold attempt to manipulate the judicial system to obtain an unfair advantage. When? When? When does there have to be that intent? I think that intent had to exist at the moment that he said at plea, the moment that he allocated to the 2008 start date. And so. So it has to be at the beginning? Yes. All right. So if he doesn't know there's going to be a second one, he can lie until the cows come home and it's not judicial estoppel. Well, I think there's a difference between. So there's a difference between the elements of perjury and judicial estoppel. I'm not talking about perjury. I'm talking about judicial estoppel. The second proceeding, proceeding, proceeding, charge, whatever, hasn't even come up yet. But he says, A, in the first proceeding, and then when the tables turn and A won't cut it anymore, he says not A in the second. And I understand the question, but simply making a misrepresentation to the court is not enough to establish the culpable mindset that is required to invoke a doctrine as harsh as naturalization is at risk. And the Supreme Court explained, and I think really, Your Honor, what your question is getting to is, what was his motive? Why would he volunteer a false? No, I'm trying to get to what do we mean by make a mockery? It's a tag, a ticket, a label that doesn't make sense in this context, is my view. Because people who lie, as this litigant is alleged to have done, and take inconsistent positions in doing it, they're not trying to get people to laugh at the judicial system. They're trying to get the benefit of what the story was in the first proceeding and changing the story in the second proceeding to get the benefit of that. It's not with intent to make people laugh at or ridicule the judicial system. Well, I would entirely agree with your characterization of that. So the make a mockery label doesn't make sense? That's correct, Your Honor. Okay. Thank you. And I think that one of the main uses of discretion that the district court, that's embodied in the district court's judicial estoppel findings is that in the United States, sorry, Slater versus U.S. Steel, the court instructed that you have to conduct a hearing if there's any question about what the defendant's intent was, that you have to look to all of the facts in circumstances before you can assume the defendant acted with some sort of nefarious intent. And that requires considering, among other things, the sophistication of the defendant, any explanation he might have for his inconsistency, what sort of advice was given to him by his attorney. And below, the lower court did none of those things. What, excuse me, I think your biggest hurdle in judicial estoppel is, excuse me, deferential standard of review. So what in the district court's findings is clearly erroneous and why? So I would identify a few things. One is, it is clearly erroneous in the face of conflicting interpretations of the defendant's intent to invoke judicial estoppel without the benefit of a factual finding. The second is that under Slater versus U.S. Steel, it is clearly erroneous to make an assumption about judicial intent without considering all of the facts and circumstances, including the ones that I just delineated. A third would be, I think that there was a clearly erroneous finding of fact insofar as the court suggested that the district court relied on his allocution to accept the plea and that he volunteered the plea in order to get the benefit of the bargain. There is, that's not a fact that was supported by the record. There's no indication that Mr. Munoz believed that having already pled to a sizable drug conspiracy and subjected himself to a 10-year mandatory minimum, that he thought that he would also have to allocute to the 2008 start date in order to get the benefit of the plea. The plea does not make, the plea itself was not conditioned on him agreeing to the start date. Yeah, but are you saying acceptance of responsibility did him no good in this case? I'm not saying that it did him no good, Your Honor. I'm saying that there's no indication of responsibility. Then that was his benefit. That was his purpose. That was his motive. But there's no indication, I see that my time has expired. Can I, may I answer the question? There is no indication in the record that the acceptance of responsibility, which by the way was something that didn't come up until sentencing, there's no indication that he believed that the acceptance of responsibility was contingent on him volunteering the legally inconsequential fact of when he started the conspiracy. Having already pled to a multi-year conspiracy with substantial quantities of marijuana and cocaine, there's no reason to believe that he thought, oh, I also have to say I started the conspiracy in 2008, otherwise I'm going to be denied the two points acceptance of responsibility. Thank you. Mr. Liggett. Good morning, Your Honors. I may please the court, Troy Liggett for the United States. I'm not going to re-argue the issues that we stated in our brief, and I'm here to answer any questions. But I want to address the latest response of, the appellant's response to the government's 28-J letter and the Winningham case that was just handed down by the Second Circuit last week. In that response, appellant makes three points that I think clearly outline the issues in this case. And I'm going to go through them in reverse order. The first is appellants argue that the statement of facts and the facts stated under oath in his plea colloquy in his criminal convictions don't matter. He's trying to state a different position now that is contrary to the facts that he stated in his criminal plea colloquy. So how did his statement in the plea colloquy benefit him? It benefited him, Your Honor. The second point that he makes in his letter is it benefited him because if you look at the transcript, he brought the issues of the dates up himself. He, on the eve of trial, decided he was going to plead guilty.  Which he would have faced regardless of when the conspiracy ran within the allegations of the indictment. Correct. But because he was pleading guilty, he was accepting responsibility. And the court, in meeting its Rule 11 obligations, brought up the issue of the statement of facts that was there and asked him, did you read this line by line, word by word, as the court was meeting its obligation to determine that there was a factual basis for the plea? We understand what he said, but Judge Karns' question was, what benefit did he obtain? He then said, I questioned the facts because of the sentencing. And he obtained a benefit because he was trying to be as truthful as possible and demonstrating to the court that he was accepting responsibility. But how does the reference to late 2008 have anything to do with the acceptance of responsibility? Because he was standing before the court, reciting the facts underlying the factual basis. Well, because he had to, I mean, as part of his guilty plea, he had to, he was accepting responsibility. But how are the dates in any way critical? How is there, where is there evidence in the record that he gained the acceptance of responsibility credit because of, or even in small part, due to the late 2008 reference? Well, you have to look at his intent. He specifically said, I'm, I'm talking about this for sentencing purposes because I want to take responsibility. I want to be as truthful to the court as I can about the facts. He was under oath, the court warned him, under penalty of perjury, he needed to tell the truth. And so he did. Conspiracies are not pleaded in a time vacuum. You can, you can experience them at a later time. Let me clarify your argument for you, if I may. The government had a proffer. This is what we expect to prove. He didn't want to rock the boat, baby. Didn't want to turn the boat over, as the old lyrics say. So he admitted what the government had put out there. If the government had put a shorter period, you're saying, he would have admitted that because he wanted acceptance of responsibility. He didn't want to shirk responsibility by picking a fight with the government. Isn't that what you're saying? No, Your Honor. Well, so you're telling me if the government had said that it ended at a different period, he wouldn't have admitted to that. He was testifying under oath, Your Honor. He always tells the truth. That's why he got caught and got convicted and got sentenced. And as a convicted felon, that doesn't make sense. He wanted to tell the truth. How do we know he wanted to tell the truth? Your Honor, I think this goes back to your, your mockery question. I think if he, if we had to take on its face that he was telling the truth, that was his position then. Those days were his position. He specifically brought him up. The court had a Rule 11 obligation to review the factual basis. Conspiracies must be completed in a time range. The Whittingham case demonstrates that that time range matters. Yeah, but the time range here, what he said wasn't critical. It didn't matter whether he said, yeah, it stopped now or it stopped at a different time. It mattered if he was telling the truth. And you have to rely on the fact he was under oath. And that was what he was saying then. Those dates are what I inspire. Your argument is, is dependent upon our presumption that he always tells the truth. No, Your Honor. How do we know he was telling the truth? He's under oath. We don't. But under traditional estoppel, it relied on, number one, taking inconsistent positions. Which he concedes. He concedes that he took inconsistent positions. Okay. So now the question is, how did he intend to make a mockery or how did he benefit from that statement? Because he stood in front of the criminal court and specifically brought up that he wanted the court to make sure it understood his concept of the dates. If you look at the transcript, Complaint Exhibit E, he's like, Your Honor, the government had those dates, but I want to make sure you understand. It's pled from June 2008 to May 2011 that I conspired to deal in marijuana and cocaine. But Your Honor, I was dealing marijuana in July of 2008, but I didn't start dealing cocaine until 2010. I just want the court to make sure, clear on that point. He brought this up, he stated it there. Your position is if the crime charge allegations are about an immaterial matter, if there's an allegation about an immaterial matter, judicial estoppel, immaterial in that proceeding, judicial estoppel applies, can apply. If it's material in the later matter, that's what we got here, immaterial in the first matter, material in the second matter. And you're saying it's enough. Your Honor, the government doesn't contend that this was immaterial in the first matter. Conspiracies are not alleged in a time vacuum. What's it material to? Well, when Judge Kinkle had to run through the factual basis, had to understand it was correct. First, the government had, under the pleading requirements for a case, has to plead to a time period. So if the government puts something in his proffer that's immaterial, that's an invalid plea. I think if we were talking about whether the car was green or blue, that's a different issue than this, where it is a conspiracy over time. And the government, specifically in the statement of facts, his tie-in in that entire statement of facts is that starting in 2008, But what if he had gotten up and said, Your Honor, I absolutely accept responsibility. I was part of this conspiracy, 100%. Starting in 2010, this is, this is what I did. But he would have, he still would have qualified for the acceptance of responsibility credit, right? Because he would have, he would have admitted to it. And that was immaterial when it started, because he has just said, I did it, but I'm just telling you when it started. That's a little bit different. But then there would be inconsistent positions. Here, he admits, he's taking an inconsistent position. But we're talking about whether the date was somehow beneficial to him in getting this acceptance of responsibility credit. But what we're talking about is that this is an immaterial fact, the date that it started. It is immaterial. He was warned during his criminal proceedings that he could face denaturalization. He was warned. He talked about that with his judge. The only way that, that they would face denaturalization is if he admitted it before he naturalized. I'll bring up another point. This isn't just the two situations where he had inconsistent positions. If you look at his pleading before the 11th circuit in the habeas position, his position in his habeas proceedings before this court was that I had ineffective assistance of counsel because my criminal plea proves that I committed the crime before I naturalized. It wasn't an issue of might I be denaturalized. It's an issue that I was going to. He took that position in between these two cases before this court. If you look at his brief, he said, I had ineffective assistance of counsel because my criminal conviction would have mandated my denaturalization because the facts that I admitted before the court would have required, proven that I committed the crime before I naturalized. That was his position then. But does that, I'm not sure that speaks to the materiality of the date. It was wrong. We rejected it. We rejected his position. You rejected his position, but it was his position. He didn't benefit from it. He didn't benefit from that position, but he benefited from the position the government contends when he was standing up before Judge Hinkle and Judge Hinkle had his rule 11 obligations to make sure that he understands what his crime was, that the facts, conspiracies are committed in a timeframe. So what about the fact that Judge Hinkle said he didn't rely on the dates? It's a conflict in this. Judge Windsor, in his decision, concludes that he did, and it's Judge Windsor's decision that's under review here. Well, because Judge Windsor did so without a hearing. Judge Windsor looked at the record and determined that Munoz stood before Judge Hinkle, Judge Hinkle went through his rule 11 obligations to determine a factual basis. Munoz himself brought up the issues of the dates and wanted to clarify them for the court. Munoz himself thought it was important for whatever reason. He interrupted the proceedings to say, but Judge, I want to make sure we got the dates right. This is when I started dealing marijuana. This is when I started cocaine. The transcript doesn't say what he had on his mind. The transcript shows that he thought it was important enough to bring it up for whatever reason and put it before Judge Hinkle in the plea colloquy. But that's not the element. What he thought, his subjective belief is not the element. It may be a requirement, but it's not the essential element. It's not an essential element. But if you look at the Whittingham case from the Second Circuit, if this case was a month before the naturalization, the Second Circuit determined the dates matter. In that regard, the court determined when the crime ended. It was a conspiracy crime, just like this one, that was a conspiracy to commit bank fraud. It was less during the period and the court determined and the court determined that therefore the court concluded that date. That's an unpublished case from the Second Circuit, isn't it? It is. It is. Your Honor, I will close by noting the Satterfield case that indicates that a In Whittingham, if it doesn't say this in the 11th Circuit or in the Second Circuit decision, but if you look at the district court's order, the facts that were put before the jury were stipulated facts. The issue there was who committed the crime and the parties stipulated to the victims and when it happened. Here, we're dealing with a statement of fact, and it was written by the government, but it was signed by Mr. Munoz. Judge Hinkle took the time to walk through it and ask him, did you read it line by line, word by word? Did you have it translated to you? It is important that this court protects the integrity of those plea hearings when a criminal defendant stands up, testifies under oath to facts that might not have been, may or may not have been material then, but are material now. Thank you, Your Honor. Your Honor, I'll be relatively brief. I just wanted to address a few points that the government's counsel raised. For start, he said that Mr. Munoz was put on notice that his plea might affect his denaturalization. I want to draw the court's attention to the sequencing of events at the plea hearing, and the government's attorney said that the plea could affect his denaturalization at the very end of the plea hearing, long after Mr. Munoz's start date. He volunteers the 2008 start date on page nine of the plea hearing, and it's not until page 19 that the government attorney says, but by the way, this might impact your citizenship. And then, and he says, I can't make any promises either way. And then Judge Hinkle says, I'm not an immigration judge. I don't know what the consequences are going to be. So the idea that the effect of his plea was planted firmly in his brain, I think is contradicted by the record. And what's more, this camps, the Supreme Court explained in this camps that when, when defendants are pleading, they often have tunnel vision on the charges that are immediately before them. They're not thinking about the distant possibility that 10 years down the road, what they say might have some sort of hypothetical consequences for them. To get back to Judge Pryor's question about what the abuses of discretion were, I think I was able to tick off two or three. I think the government, the government's attorney actually points to a third one, which is, it appears that the gut, that in the lower court, lower court's decision found an intent to make a mockery in part based on the inconsistent positions that were raised in the 2255 and the, and the Mr. Munoz position in these proceedings. As Judge Carnes pointed out, that position wasn't accepted, which is a requirement of judicial estoppel. It was rejected by this court. There's uniform authority that arguments in the alternative as this was are not subject to judicial estoppel. And those are, so I think at this point we have, if I'm counting correctly, that's three independent abuses of discretion in the judicial estoppel finding, and I would identify two others in relation to the court, the Supreme Court's test in New Hampshire versus Maine. The, the lower court articulated this court's two part fact, two factor test in Slater versus U.S. Steele. It ignored factors three and four in New Hampshire versus Maine, which require judicial acceptance and reliance and require a showing that an unfair advantage or detriment would obtain in the absence of estoppel. And I think the reason the court did this is because, you know, Slater only mentioned those, the, the first two factors because Slater was a bankruptcy case and Slater explained that in the specific context of bankruptcy, factors three and four don't make any sense because the party invoking judicial estoppel wasn't a party to the initial proceedings. Factors three and four apply in all other instances. The court, the lower court failed to apply them here. And for these and all the other reasons put forth in our briefs, the, the this court should reverse the order below.  Okay. Now called.